UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James T. Burke,

    Plaintiff,

    v.                                                                            Civil Action No. 2:15-cv-22

State of Vermont and
Vermont Department of Corrections,

    Defendants.

## REPORT AND RECOMMENDATION
(Doc. 9)

Plaintiff James T. Burke, an inmate in the custody of the Vermont Department of Corrections (DOC), brings this action *pro se* under 42 U.S.C. § 1983 against Defendants DOC and the State of Vermont, alleging, among other things, that his rights were violated in connection with a November 3, 2012 incident at Corrections Corporation of America's (CCA) Lee Adjustment Center (LAC) in Beattyville, Kentucky involving the theft or destruction of some of Burke's personal property.  Defendants have filed a Motion to Dismiss, arguing that Burke's federal claim is barred by the State's and DOC's sovereign immunity, that the court lacks jurisdiction over any remaining state-law claims, and that Burke's Complaint is barred by the doctrine of res judicata.  (Doc. 9.)  Burke opposes dismissal, and also seeks sanctions against counsel for Defendants for allegedly failing to serve the original Motion to Dismiss.  (Doc. 20 at 1.)

For the reasons discussed below, I recommend that Defendants' Motion to Dismiss (Doc. 9) be GRANTED and that Burke be granted leave to amend. I further recommend that Burke's claims for money damages against Defendants and his equal-protection and negligence claims arising out of the November 3, 2012 incident be DISMISSED. In addition, Burke's claims for injunctive relief regarding the LAC recreational yard and the adherence to inmate property policies at LAC should be DISMISSED as moot. Finally, I recommend that Burke's request for sanctions (*see* Doc. 20 at 1) be DENIED.

## Background

Burke alleges as follows in his Complaint. On November 3, 2012, while Burke was in the recreational yard at LAC, fellow inmate Allen Rheaume broke into his locked cell locker and damaged or stole approximately $800 worth of his personal property. (*See* Doc. 4 at 4, 12–13, 15.) LAC staff had "cultivated" Rheaume as an informant and also to steal Burke's property. (*Id.* at 15.) On November 6, 2012, at the request of CCA staff, Burke filed a CCA "Lost/Damaged/Stolen Personal Property Claim" form relating to the November 3 incident. (*Id.* at 6; Doc. 4-1.) According to Burke, that claim resulted only in CCA's offer of a $50 "unlawful property cap amount." (Doc. 4 at 2.) Burke says that CCA has reimbursed other inmates more than the $50 "max property value limit." (*Id.* at 9.) Thus Burke alleges that he has been deprived of equal protection. (*See id.*)

Burke also alleges that his loss was caused by negligence, including failure to provide sufficiently strong lockers, failure to have LAC staff in the housing area where the loss occurred, failure to promptly repair the locker to prevent further thefts, and

2

failure to properly investigate the loss.  (*See* Doc. 4 at 6–7, 10.)  According to Burke, LAC was "just recently forced" (*id.* at 4) and "ordered" to change their policy so that a staff member is in each housing unit at all times.  (*See id.* at 13.)  Burke asserts that LAC staff was upset about being required to implement that costly change, and has retaliated by refusing to open the recreational yard fully.  (*See id.* at 16.)

Finally, Burke asserts that, after a January 22, 2015 search of his cell revealed certain non-allowable property, LAC staff failed to permit Burke to mail the property home, and instead claimed that the property was "lost."  (*Id.*)  This separate incident, Burke says, demonstrates Defendants' disregard for inmates' property rights.  (*See id.* at 17.)  For relief, Burke seeks $2,500 in compensatory damages; $2,500 in punitive damages; $500 in costs; an order that "Defendant at CCA/LAC" be required "to open the Rec. Yard like they used to do"; and an "injunction against CCA/LAC Staff" requiring them to follow policies concerning inmate property.  (*Id.* at 18.)

The following additional facts are relevant to Defendants' res judicata argument.[1]  On or about May 10, 2013, Burke filed a *pro se* suit in Kentucky's Lee Circuit Court seeking "the replacement cost" for his personal property that was damaged or stolen in the November 3, 2012 incident.  (*See* Doc. 9-1 at 1.)[2]  He named CCA, LAC "un-named

---

[1] The court filings and decisions discussed here are properly considered either because they are attached to or incorporated by reference into Burke's Complaint, *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 685 n.2 (2d Cir. 2013), or because they may be judicially noticed, *Briggs v. Warfield*, No. 2:06-CV-227, 2007 WL 4268918, at *3 (D. Vt. Nov. 30, 2007) ("When a party moves to dismiss on the basis of *res judicata*, the Court may consider both the face of the complaint and matters of which the Court may take judicial notice, including prior court decisions.").

[2] Burke's suit in Lee Circuit Court was docketed *Burke v. Brandenburg*, No. 13-CI-00067.

3

Staff," and Mitchell Brandenburg as defendants. (*Id.*)[3] He claimed that LAC staff was negligent in watching the inmates in the housing unit, never attempted to locate his stolen property, performed a "bogus investigation," failed to award him the replacement cost of the property, and failed to get the damaged locker fixed. (Doc. 9-1 at 1–2.) Burke asserted that other inmates had received compensation exceeding the $50 "max property value limit," and that failure to award him the full replacement cost was a violation of the Equal Protection Clause. (*Id.* at 3–4.)

Burke's suit in Lee Circuit Court was "fully litigated with extensive discovery conducted by the parties," (Doc. 9-4 at 1), and the court entered summary judgment on or about September 19, 2014 (Doc. 9-2 at 1).[4] It is undisputed that the Lee Circuit Court awarded Burke judgment in the amount of $50. (*See* Doc. 4 at 2; Doc. 9 at 2.) In a motion dated September 24, 2014, Burke sought "reconsideration and voluntary dismissal" of the $50 award. (Doc. 9-3 at 1.) In that motion, Burke argued that the $50 award was unjustly low due to residual southern animosity over the Civil War. (*See id.*) Burke asserted that he "needs this $50.00 injustice dismissed so he can pursue within the (3) three year statu[t]e of limitations, a Small Claims Court action in the Vermont Jurisdiction Court that hand[le]s all out of state Vermont inmate property claims." (*Id.*)

---

[3] Burke's complaint in the Lee Circuit Court did not indicate Brandenburg's position, but it appears from Burke's other filings in this case that Brandenburg is (or was) the "QA Manager" for CCA at LAC. (*See* Doc. 4-3 at 1.)

[4] Document 9-2 resembles a docket sheet for *Burke v. Brandenburg*, No. 13-CI-00067. It indicates that it is "Not an Official Court Record," but Burke does not appear to challenge the accuracy of Document 9-2's representations concerning any of the relevant events in the Lee Circuit Court.

4

In a one-page order dated October 8, 2014, the Lee Circuit Court ruled as follows:

> This matter having come before the Court on motion of the Plaintiff for voluntary dismissal of this action; Whereas, the Defendants having no objection to a dismissal with prejudice; Whereas, the Plaintiff Burke filed this action over the loss of or damage to certain personal property including an X-Box, X-Box controller and various food and personal items on or about November 3, 2012, at the Lee Adjustment Center, Beattyville, Kentucky; Whereas, this matter was fully litigated with extensive discovery conducted by the parties, dispositive motions filed by each party, and ruling by this Court on said motions; the Court having considered this matter and being otherwise sufficiently advised,
> IT IS HEREBY ORDERED AND ADJUDGED as follows:
> 1.   The action herein is dismissed, *with prejudice*.

(Doc. 9-4 at 1 (emphasis added).)  It does not appear that Burke sought to appeal the Lee Circuit Court's dismissal.  (*See* Doc. 9-2.)  However, in his Complaint in this § 1983 case, Burke claims that the Lee Circuit Court "unlawfully" dismissed his case with prejudice.  (Doc. 4 at 3.)

On October 14, 2014, Burke filed a Small Claims Complaint in the Vermont Superior Court, Civil Division, seeking $3,000 in damages arising out of the same November 3, 2012 incident.  (*See* Doc. 9-5.)[5]  It appears that in the Vermont suit Burke reiterated the same claims that he brought in the Kentucky litigation, including claims that his loss was caused by negligence, as well as a claim that failure to award him more than $50 violated the Equal Protection Clause.  (*See id.* at 2, 4.)  Burke named "State of Vt./David Groff, Esq." as the defendant.  (*Id.*)

In an order dated January 5, 2015, the Small Claims Court granted the defendant's motion to dismiss, ruling as follows: "By Order of October 8, 2014 of the Lee Circuit

---

[5] The Vermont case was docketed *Burke v. Vermont Attorney General*, No. 538-10-14 Wnsc.

Court, the case was 'dismissed, with prejudice.' That means that the claim cannot be brought again in another court." (Doc. 4-7 at 1.) It does not appear that Burke attempted to appeal the Small Claims Court's dismissal. He now claims that the Small Claims Court's dismissal was unlawful because it was premised on the Lee Circuit Court's "unlawful" dismissal with prejudice. (Doc. 4 at 4.)

Burke filed his § 1983 case in this court on March 5, 2015. (Doc. 4.) On July 13, 2015, Burke filed a Notice of Change of Address reflecting his transfer from LAC to the Northlake Correctional Facility in Baldwin, Michigan. (*See* Doc. 21.)

## Analysis

### I.     Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). Because Burke represents himself, he is entitled to a liberal construction of his pleadings. *Warren v. Colvin*, 744 F.3d 841, 843 (2d Cir. 2014) (per curiam).

## II.     Sovereign Immunity

Defendants assert that Burke's § 1983 claims against the State and DOC are barred by sovereign immunity.  (Doc. 9 at 3.)[6]  Indeed, the Eleventh Amendment prohibits damages claims in federal court brought by citizens against the State and its agencies, absent a waiver of immunity and consent to suit by the State or a valid abrogation of constitutional immunity by Congress.  *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–100 (1984).  Neither exception applies here.  Vermont has expressly preserved its immunity under the Eleventh Amendment.  *See* 12 V.S.A. § 5601(g).  And Congress did not intend to abrogate sovereign immunity by enacting § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 340–41 (1979).

Burke's arguments against the application of sovereign immunity (Doc. 20 at 1, 15–16) are not persuasive.  He appears to argue against Defendants' suggestion that he has not articulated any federal constitutional claim at all.  (*See* Doc. 9 at 3 n.2.)  Of course, the denial of federal statutory rights or constitutional rights or privileges is an essential element of any § 1983 claim.  *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  But Defendants' sovereign immunity argument does not depend on

---

[6] "[W]hether the claim of sovereign immunity constitutes a true issue of subject[-]matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit."  *Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013).  The distinction is potentially significant because the court "must accept all factual allegations in a complaint as true when adjudicating a motion to dismiss under Fed. R. Civ. P. 12(b)(6)," but "may resolve disputed factual issues by reference to evidence outside the pleadings" when adjudicating a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).  It is unnecessary to resolve that issue here because the facts bearing on the sovereign immunity issue are the same under either the Rule 12(b)(1) or the Rule 12(b)(6) standard.

whether Burke has in fact articulated a federal constitutional claim.  Their argument is that even if Burke *has* done so, sovereign immunity bars his § 1983 claim.

Thus, Burke cannot obtain money damages against DOC or the State of Vermont.  However, as noted above, Burke seeks injunctive relief in addition to money damages.  And excepted from sovereign immunity are "suits against state officers alleging a violation of federal law and seeking injunctive relief that is prospective in nature."  *Nat'l R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 100 (2d Cir. 2015); *see also Ex parte Young*, 209 U.S. 123 (1908).  But Burke has not named a Vermont state official acting in his or her official capacity as a defendant.  Thus Burke's current pleading does not fit within the exception to Eleventh Amendment immunity under *Ex parte Young*.  *See Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991).  Accordingly, sovereign immunity bars all of Burke's claims against DOC and the State of Vermont.

Moreover, Burke has recently been transferred from LAC to the Northlake Correctional Facility in Baldwin, Michigan.  (*See* Doc. 21.)  Thus his claims for injunctive relief regarding the recreational yard and inmate property practices at LAC would appear to now be moot.  *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *Casey v. Pallito*, No. 5:12-cv-284, 2013 WL 6673623, at *18 (D. Vt. Dec. 18, 2013) (citing cases).

Although the above reasons would be a sufficient basis to grant Defendants' Motion to Dismiss, I address Defendants' claim-preclusion argument below because

resolution of that issue affects the analysis regarding the scope of the grant of any leave to amend to which Burke might be entitled.

## III. Claim Preclusion

Under the Full Faith and Credit Act, "judicial proceedings of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. "To qualify for full faith and credit under the Act, the 'state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause.'" *Conopco*, 231 F.3d at 87 (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982)). "To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state." *Id.*

Kentucky adheres to the doctrine of claim preclusion, which is designed "to preclude repetitious actions." *Miller v. Admin. Office of the Courts*, 361 S.W.3d 867, 872 (Ky. 2011).[7] "Three elements must be met for the rule to apply: (1) there must be an identity of parties between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits." *Id.* "[C]laim preclusion, in addition to barring claims that were litigated, also applies to bar claims that could have been brought in the former action (unlike issue preclusion)."

---

[7] The terms "res judicata" and "claim preclusion" are sometimes used interchangeably, but it is more precise to describe the doctrine upon which Defendants rely as claim preclusion. *See id.* at 871 (noting that "res judicata" encompasses two doctrines: claim preclusion and issue preclusion).

9

*Id.* at 873.[8]  Before examining the three elements of claim preclusion, I address Burke's contentions that certain exceptions to the doctrine apply in this case.

### A. No Exceptions Apply

As Burke points out, this court has previously stated that "there is a well-recognized exception to *res judicata* when the court in the first action had limited jurisdiction with respect to the available remedies." *Ladd v. Thibault*, No. 1:08-cv-255, 2009 WL 3248143, at *7 (D. Vt. Oct. 6, 2009) (citing *Nestor v. Pratt & Whitney*, 466 F.3d 65, 73 (2d Cir. 2006) and Restatement (Second) of Judgments § 26(1)(c)). Kentucky has recognized that exception. *See Miller*, 361 S.W.3d at 873.  However, Burke offers nothing more than a conclusory assertion that this exception applies.

Specifically, Burke does not articulate any formal barrier to the full presentation of his claim in the Lee Circuit Court.  *See* Restatement (Second) of Judgments § 26(1)(c) cmt. c (describing "formal barriers" that might disable a plaintiff from presenting a claim).  For example, he does not assert that the Lee Circuit Court lacked jurisdiction to hear and decide his claims, nor does he articulate any inhibitions imposed by a procedural mode in that court. *See generally id.*  To the contrary, Kentucky's circuit courts are courts of general jurisdiction—*see* Ky. Rev. Stat. Ann. § 23A.010(1);

---

[8] Burke argues that it is not enough that a claim could have been litigated, and that the law requires that a claim have been *actually* litigated. (Doc. 20 at 2, 16.)  It is true that, prior to 1984, the Second Circuit had stated that, in § 1983 actions, "'a prior state court proceeding does not bar federal court consideration of constitutional claims not *actually litigated* and determined in that proceeding.'" *Vasquez v. Van Lindt*, 724 F.2d 321, 325 (2d Cir. 1983) (emphasis added) (quoting *Gargiul v. Tompkins*, 704 F.2d 661, 666 (2d Cir. 1983)).  However, the Supreme Court reversed and remanded *Gargiul* for further consideration in light of *Migra v. Warren City School District Board of Education*, 465 U.S. 75 (1984). *Tompkins v. Gargiul*, 465 U.S. 1016 (1984).  It is now settled that res judicata "applies equally to constitutional claims arising under § 1983 which *could have been* argued in an earlier state court proceeding." *Coolidge v. Coates*, No. 1:06-CV-92, 2006 WL 3761599, at *3 (D. Vt. Nov. 20, 2006) (emphasis added) (citing *Migra*, 465 U.S. at 84–85)).

10

*St. Joseph Catholic Orphan Soc'y v. Edwards*, 449 S.W.3d 727, 736 (Ky. 2014)—and Kentucky does not divide forms of action such that Burke would have been procedurally unable to present his full claim, *see* Ky. CR 2 ("There shall be one form of action to be known as 'civil action.'").

Burke's argument on this point might be an attempt to argue—as he did in his September 24, 2014 motion for reconsideration and voluntary dismissal in the Kentucky case—that the $50 award was unjustly low due to residual southern animosity over the Civil War.  That argument is not an argument that the Lee Circuit Court lacked jurisdiction with respect to available remedies.  However, it may be an argument that the Kentucky proceedings failed to satisfy due process.  The court should reject that argument.  Burke offers no facts or cases that remotely suggest that the courts of the Commonwealth of Kentucky render decisions other than according to law.

B.   **Action Decided on the Merits**

Turning to the elements of claim preclusion, I begin with the requirement that the prior action was decided on the merits.  In cases where a court issues an order granting a plaintiff's request for dismissal *with* prejudice, courts generally conclude that there is indeed a final judgment on the merits for claim preclusion purposes.  *See Cascio v. Nettles*, No. 8:09-CV-1128 (GTS/DRH), 2011 WL 3847337, at *4 (N.D.N.Y. Aug. 30, 2011); *Barr v. Brother's Constr., Inc.*, No. 2012-CA-001914-MR, 2014 WL 5801863, at *3 (Ky. Ct. App. Nov. 7, 2014) ("Agreed Order" in prior action was an adjudication on the merits because it specifically dismissed the matter with prejudice).  Here, however, Burke did not request dismissal with prejudice; in his September 24, 2014 motion for

11

reconsideration and voluntary dismissal he sought dismissal of the Kentucky suit specifically in order to bring his claim in Vermont Small Claims Court.  Thus a fair characterization of the relief Burke sought from the Lee Circuit Court was dismissal *without* prejudice—a disposition that would have had no preclusive effect.  *See Edinger v. Miller*, 174 S.W.2d 421, 421 (Ky. 1943).

     I conclude that the Lee Circuit Court's dismissal with prejudice was nevertheless a decision "on the merits" for claim preclusion purposes.  Even though Burke intended to obtain a dismissal without prejudice, it does not appear that he sought reconsideration of the Lee Circuit Court's dismissal with prejudice, nor did he seek to appeal that dismissal. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 385 n.12 (2d Cir. 2003) (concluding that earlier dismissal with prejudice was a judgment on the merits notwithstanding plaintiff's intent to obtain a dismissal without prejudice because plaintiff received notice of the dismissal with prejudice; any error in allowing a judgment with prejudice to be entered did not prevent the judgment from being "on the merits").

     Perhaps more importantly, no court would have granted Burke dismissal without prejudice under the circumstances.  As the Lee Circuit Court indicated, Burke's Kentucky suit was fully litigated with extensive discovery, and the court ultimately ruled on dispositive motions filed by both parties, apparently also ruling that Burke was entitled to a damage award of $50.  As Burke's own September 24, 2014 motion for reconsideration and voluntary dismissal made clear, he sought dismissal because he was dissatisfied with that result and sought to obtain a more favorable result in Vermont Small Claims Court. No rational system of justice could countenance such a strategy.  *See Cahalan v. Rohan*,

423 F.3d 815, 818 (8th Cir. 2005) ("A party may not dismiss simply to avoid an adverse decision or seek a more favorable forum."); *Councell v. Homer Laughlin China Co.*, Civil Action No. 5:11CV45, 2012 WL 896646, at *2 (N.D.W.Va. Mar. 15, 2012) ("If such a litigation strategy were permitted, the result would open the door to permitting plaintiffs to move from court to court, testing the waters of each court's opinion of their claims, then, when unfavorable results were imminent, voluntarily dismiss the case and avoid all ramifications of an unfavorable judgment, allowing the plaintiffs to try again until they received the result they desired."); *Tejeda v. Senkowski*, No. 92 Civ. 3012 (CSH), 1993 WL 213036, at *5 (S.D.N.Y. June 16, 1993) ("Generally, courts disapprove of motions for voluntary dismissal that are filed after extensive litigation with the intention of circumventing an adverse result.").

### C. Identity of the Parties

The identity-of-the-parties element is also satisfied in this case. Burke was the plaintiff in the Kentucky action, and he is also the plaintiff in this § 1983 case. It is true that the defendants in the two cases are not the same: the defendants in the Kentucky case were CCA, LAC "un-named Staff," and CCA QA Manager Mitchell Brandenburg, while Defendants in this case are DOC and the State of Vermont. However, claim preclusion also "bars subsequent litigation between the same parties *or their privies*, on a previously adjudicated cause of action." *Moorhead v. Dodd*, 265 S.W.3d 201, 203 (Ky. 2008) (emphasis added). I conclude that, for res judicata purposes, all of the defendants are in privity.

13

Privity is "founded upon such an identity of interest that the party to the judgment represented the same legal right." *State Farm Mut. Auto Ins. Co. v. Shelton*, 368 S.W.2d 734, 737 (Ky. 1963).  Here, CCA and its staff at LAC share the same legal interest with DOC and the State of Vermont: determining what compensation is due to Burke for the November 3, 2012 incident.  Notably, Burke does not challenge any acts of DOC or the State of Vermont that are distinct from the acts of CCA or its staff.  Indeed, even Burke appears to consider the defendants to be interchangeable, seeking injunctive relief against "Defendant at CCA/LAC" and "CCA/LAC Staff" in this case while naming only DOC and the State of Vermont as defendants.

      **D.**    **Claims Have Been or Could Have Been Fully Litigated**

Almost all of the claims that Burke alleges in this § 1983 case were or could have been litigated in the Lee Circuit Court.  Most notably, Burke's complaint in the Kentucky case appears to allege negligence and explicitly alleges an equal-protection claim.  Burke brings those same claims in this suit.  Accordingly, those claims are barred.

A liberal construction of Burke's Complaint suggests he is advancing two claims that were not and could not have been litigated in the Lee Circuit Court.  First, Burke asserts that LAC staff was upset about being ordered to assign personnel to each housing unit at all times, and has retaliated by refusing to open the recreational yard fully.  (*See* Doc. 4 at 16.)  Construing Burke's Complaint liberally, I presume that that alleged retaliatory conduct occurred after the Kentucky litigation.  Second, Burke alleges that LAC staff failed to follow protocol for disposition of non-allowable property found in his

cell after a January 22, 2015 search. (*See id.* at 16–17.) Accordingly, I conclude that those claims are not barred by the claim-preclusion doctrine.

## IV. Leave to Amend

The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once "'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Nonetheless, leave to amend may be denied in certain circumstances, including futility. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

Here, better pleading will not cure the claim-preclusion bar, nor will it cure sovereign immunity's bar on money damages against Defendants.[9] Better pleading will also not cure the fact that, since Burke has been transferred out of LAC, his requests for injunctive relief regarding the LAC recreational yard and the adherence to inmate property policies at LAC are moot. Accordingly, I recommend that leave to amend be denied as to Burke's equal-protection and negligence claims stemming from the November 3, 2012 incident, all of Burke's claims for money damages against Defendants, as well as Burke's requests for injunctive relief.

---

[9] Thus, to the extent that Burke desires to amend his Complaint to assert a higher damage claim against Defendants (*see* Doc. 20 at 1), leave to so amend should be denied.

However, by naming different defendants, or with the addition of enhanced factual allegations, Burke may be able to state a plausible claim.[10]  Any amended filing should be entitled "Amended Complaint" and should contain all claims against all parties as it will supersede the original Complaint in all respects.  The court should require that any Amended Complaint be filed within 30 days of its ruling on this Report and Recommendation.  Failure to so amend should result in dismissal with prejudice of all of Burke's § 1983 claims against Defendants.

## V.     State-Law Claims

Defendants assert that, "with no viable federal claim, this Court lacks jurisdiction to adjudicate any remaining state[-]law claims."  (Doc. 9 at 3.)  It is true that the court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Here, for the reasons described above, any negligence claim that Burke might be alleging with respect to the November 3, 2012 incident is barred by claim preclusion; it is therefore unnecessary to apply § 1367(c)(3) with respect to that claim.  As to any other state-law claims that Burke might be asserting, the court should await Burke's decision as to whether to file an Amended Complaint.  If Burke fails to state a claim over which the court has original jurisdiction, then the court should decline to exercise supplemental jurisdiction over any state-law claims.

---

[10]  I note that Burke also appears to desire to raise a due process claim.  (*See* Doc. 20 at 15, 17.) In any amended filing, Burke must articulate precisely what facts he asserts give rise to a due process violation.

## VI.     Burke's Request for Sanctions

In his Opposition, Burke requests $5,000 in sanctions against Defendants' attorney for allegedly failing to serve him with Defendants' original Motion to Dismiss and for submitting a "perjury[-]infested" certificate of service. (Doc. 20 at 1.) The court should deny that request because Burke failed to raise it in a specifically titled "motion" under L.R. 7(a), because it appears to be an untimely motion for reconsideration under L.R. 7(c), and for the reasons stated in the court's prior Order on the same topic filed May 11, 2015 (Doc. 13).

## Conclusion

For the above reasons, I recommend that Defendants' Motion to Dismiss (Doc. 9) be GRANTED and that Burke be granted leave to amend. Burke's claims for money damages against Defendants and his equal-protection and negligence claims arising out of the November 3, 2012 incident should be DISMISSED because no amended pleading could cure the bars to those claims. Burke's claims for injunctive relief regarding the LAC recreational yard and the adherence to inmate property policies at LAC should be DISMISSED as moot. Finally, I recommend that Burke's renewed request for sanctions (*see* Doc. 20 at 1) be DENIED.

Dated at Burlington, in the District of Vermont, this 20th day of August, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).